OPINION
{¶ 1} Defendant-appellant, Thomas Poppe (hereinafter "appellant"), appeals the judgment of the Auglaize County Court of Common Pleas.
 {¶ 2} At 4:30 a.m. on June 15, 2004, the appellant went to Wilma Ginter's (hereinafter "Ginter") home in St. Mary's, Ohio, to visit his wife, Michelle Poppe (hereinafter "Michelle"). Michelle was living at Ginter's home at the time of the incident but did not meet with the appellant during this visit to the residence. Instead, the appellant visited with Todd Slone (hereinafter "Slone"), Ginter's son and a resident of the household. Mrs. Ginter became upset by the appellant's visit and asked him to leave her home. The appellant complied with Ginter's request. Shortly thereafter, Slone also left the house, picked up the appellant, and drove to New Bremen, Ohio.
 {¶ 3} Around 6:00 a.m. of that same morning, Michelle called the St. Mary's police department dispatcher inquiring about a temporary protection order. The dispatcher told Michelle that a police officer would come to Ginter's home and give her information about a temporary protection order.
 {¶ 4} At approximately 6:30 a.m., the appellant and Slone returned to the Ginter home and found Michelle waiting outside. Slone walked inside the house leaving the appellant and Michelle alone outside. While the appellant and Michelle were outside an altercation ensued. Reacting to the event, Slone called the police and reported that the appellant was strangling Michelle.
 {¶ 5} Patrolman, Kim Reiher (hereinafter "Patrolman Reiher"), of the St. Mary's police department, was already en route to the Ginter home to discuss the temporary protection order. Upon arriving at the scene, Patrolman Reiher noticed a slight red mark on Michelle's neck. Michelle, however, decided not to file a complaint against the appellant and signed a form to that effect.
 {¶ 6} That same morning, at approximately 8:00 a.m., the appellant called the Ginter home and asked to speak to Michelle. Ginter said the appellant could not speak to Michelle because she was sleeping but that she would inform Michelle he had called. A couple of hours later, the appellant and his sister, Penny Frey, arrived at the Ginter home. Although Ginter at first invited them into her home, some time later she asked them to leave. Thereafter, Ginter called the police. The appellant and his sister were gone before the police arrived.
 {¶ 7} Subsequently, law enforcement officials sought and obtained a warrant for the appellant's arrest. Officer Sutton and Deputy Sawmiller went to the appellant's residence to arrest him. The appellant invited the officers inside the home. However, when the officers attempted to arrest him, the appellant resisted the officers' attempts. The appellant was subdued and the law enforcement officers completed the arrest.
 {¶ 8} The appellant was indicted on three counts: domestic violence, a violation of R.C. 2919.25(A), and a felony of the third degree;[1] burglary, a violation of R.C.2911.12(A)(4), and a felony of the fourth degree; and resisting arrest, a violation of R.C. 2921.33(A), a misdemeanor of the second degree.
 {¶ 9} On August 26, 2004, the appellant's jury trial commenced. At the conclusion of the state's case, the appellant moved for a judgment of acquittal pursuant to Criminal Rule 29. The trial court denied the appellant's motion. At the end of his case, the appellant renewed his Criminal Rule 29 motion for acquittal. The trial court again denied the motion.
 {¶ 10} The jury found the appellant guilty of felony domestic violence and resisting arrest. The jury found the appellant not guilty of the charge of burglary but found him guilty of the lesser included offense of misdemeanor criminal trespass. Thereafter, the trial court sentenced appellant to four years imprisonment for the felony domestic violence, ten days imprisonment for criminal trespass, and a thirty day sentence for resisting arrest. The trial court further ordered that all three sentences run concurrent to each other.
 {¶ 11} It is from this domestic violence conviction that the appellant now appeals and sets forth two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THEDEFENDANT-APPELLANT IN OVERRULING APPELLANT'S MOTION FORACQUITTAL ON THE COUNT INVOLVING FELONY DOMESTIC VIOLENCE IN THATTHERE WAS INSUFFICIENT EVIDENCE TO INDICATE THAT THE APPELLANTCAUSED OR ATTEMPTED TO CAUSE PHYSICAL HARM TO HIS WIFE, MICHELLEPOPPE.
 {¶ 12} In his first assignment of error, appellant asserts the trial court erred in denying the appellant's motion for acquittal on the domestic violence charge because the prosecution failed to prove beyond a reasonable doubt an element of the offense. Specifically, the appellant asserts that the prosecution failed to prove he caused or attempted to cause physical harm to his wife.
 {¶ 13} In State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, 381 N.E.2d 184, 9 O.O.3d 401, the Ohio Supreme Court held that "[p]ursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." The Bridgeman standard, however, "must be viewed in light of the sufficiency of evidence test * * *."State v. Foster (Sept. 17, 1997), 3rd Dist. No. 13-97-09, *2.
 {¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superceded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89,684 N.E.2d 668. When reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 15} In the case sub judice, the prosecution charged the appellant with domestic violence under R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The appellant maintains the prosecution failed to show that he knowingly caused or attempted to cause his wife physical harm.
 {¶ 16} At trial, the prosecution presented the testimony of Todd Slone. Slone testified that "it looked like at that time, Tom was choking her or something. But according to her he was just trying to give her a kiss, so." Slone further testified that he "thought it looked like [Tom] was trying to choke her, but, you know, her back was to me so." The state also presented a tape recording of the conversation Slone had with a police dispatcher in which Slone said, "Yeah, there's a problem. Dude out there strangling his wife, now he's f*** ing with my mom."
 {¶ 17} The prosecution also presented the video testimony of Patrolman Reiher. In his video deposition, Patrolman Reiher stated that Michelle told him either that the appellant grabbed her by the neck or that the appellant had a hold of her neck. According to Patrolman Reiher's deposition, when he arrived at the Ginter residence shortly after the incident, he noticed a slight red mark on Michelle's neck.
 {¶ 18} Michelle Poppe also testified during the trial. Michelle testified that she was married to the appellant. Michelle further testified that she told the police that appellant had choked her but that the choking did not in fact occur.
 {¶ 19} The appellant maintains that the state's evidence was insufficient because of Michelle's testimony denying that the appellant caused or attempted to cause her harm as well as her testimony that the red mark on her neck was likely caused by her own scratching due to medication. The appellant further contends that Michelle testified that she agreed with the patrolman's questions about being choked because she wanted the appellant to leave. Further, the appellant stresses that Michelle chose not to file a complaint regarding this incident. We find the appellant's arguments unavailing.
 {¶ 20} In the case sub judice, the appellant was convicted of domestic violence under R.C. 2919.25(A) which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." In order to convict the appellant of domestic violence, the prosecution must prove that the appellant knowingly caused or attempted to cause physical harm to Michelle.
 {¶ 21} Physical harm is defined under R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of it's gravity or duration." The presence of red marks on a victim's neck is sufficient "to satisfy the physical harm requirement of Section 2919.25(A)." State v. Sanchez (Nov. 9, 1994), 9th Dist. Case No. 2296-M, *2, citing State v. Purvis
(Oct. 25, 1989), 9th Dist. Case No. 1784, *3.
 {¶ 22} Michelle testified that the appellant did not cause or attempt to cause her physical harm, that the red marks on her neck were caused by her own scratching, and that she agreed to the police's question about being choked so that the appellant would leave. However, Michelle also testified that she told a police officer that the appellant had choked her but that the choking did not occur. The credibility of a witness is a matter primarily for the jury. State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Given Michelle's testimony, the jury could have reasonably found Michelle was not a credible witness.
 {¶ 23} Moreover, the fact that Michelle did not press charges against the appellant does not necessarily mean that the appellant did not cause or attempt to cause her physical harm.
 {¶ 24} The appellant further argues that because Ginter did not see Michelle being choked, and because there were no photographs or medical evidence showing injury to Michelle, the evidence was insufficient. The appellant also argues that the evidence was insufficient because Slone testified that he may have been mistaken about the appellant choking Michelle.
 {¶ 25} The fact that Ginter did not see appellant choke or physically harm Michelle and that there were no pictures or medical evidence does not require a conclusion that the evidence presented at trial was insufficient to convict the appellant of domestic violence. The remaining testimony, including Reiher and Slone's testimony, presented the jury with sufficient facts, which if believed, would establish each of the statutory elements of the charge. Additionally, Slone's testimony that he may have been mistaken about the appellant choking Michelle was based solely on Michelle's claim that the appellant was trying to kiss her. Slone also testified that at the time of the incident he believed the appellant was choking Michelle.
 {¶ 26} In order to convict the appellant of domestic violence, the prosecution was required to prove that the appellant knowingly caused or attempted to cause physical harm. See R.C. 2919.25(A). When viewing the evidence presented at trial in a light most favorable to the prosecution, there was sufficient evidence for the jury to find that the essential elements for the charge of domestic violence had been proven beyond a reasonable doubt. Consequently, we hold the trial court did not err in overruling the appellant's motion for judgment of acquittal. Accordingly, the appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THEDEFENDANT-APPELLANT IN REFUSING TO INSTRUCT THE JURY ON THELESSER INCLUDED OFFENSE OF DISORDERLY CONDUCT AS IT RELATED TOTHE FELONY COUNT OF DOMESTIC VIOLENCE.
 {¶ 27} In his second assignment of error, the appellant asserts that the trial court erred when it refused to submit his counsel's proposed jury instruction of disorderly conduct as a lesser included offense of domestic violence.
 {¶ 28} In State v. Deems, (1988), 40 Ohio St.3d 205, 210,533 N.E.2d 294, the Ohio Supreme Court determined the applicable standard for determining when an offense would be a lesser included offense. The Deems standard provides that "[a]n offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." Deems,40 Ohio St.3d at 209, 533 N.E.2d 294, emphasis added.
 {¶ 29} In State v. Stuber, this court looked at the individual facts of that case and found that those facts met the standard for finding that disorderly conduct was a lesser included offense of domestic violence. (1990), 71 Ohio App.3d 86,89, 593 N.E.2d 48. Since this court's decision in Stuber, the Ohio Supreme Court has clarified the standard for lesser included offenses. The Ohio Supreme Court stated that "the second prong of the Deem test requires us to examine the offenses at issue asstatutorily defined and not with reference to specific factual scenarios." State v. Barnes, 94 Ohio St.3d 21, 26, 2002-Ohio-68, 759 N.E.2d 1240.
 {¶ 30} In the case sub judice, the appellant was charged with domestic violence under R.C. 2919.25(A). Pursuant to R.C.2919.25(A), "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The appellant maintains that the trial court should have submitted to the jury his proposed jury instruction of disorderly conduct as a lesser included offense of domestic violence. The disorderly conduct statute provides in pertinent part:
No person shall recklessly cause inconvenience, annoyance oralarm to another by doing any of the following: (1) Engaging infighting, in threatening harm to persons or property, or inviolent or turbulent behavior.
R.C. 2917.11.
 {¶ 31} In State v. Schaefer (April 28, 2000), 2d Dist. Case No. 99CA88, the Second District Court of Appeals held that disorderly conduct was not a lesser included offense of domestic violence. In Schaefer, the court found that "it is apparent that one may attempt to cause physical harm to another without his or her knowledge, in which case the victim will not have suffered inconvenience, annoyance, or alarm." Id. at *3. We agree.
 {¶ 32} Since domestic violence, as defined by statute, can be committed without the offense of disorderly conduct, as defined by statute, also being committed, we hold that disorderly conduct is not a lesser included offense of domestic violence. Consequently, appellant's second assignment of error is without merit, and thus, overruled.
 {¶ 33} While this case was pending, the Ohio Supreme Court held portions of Ohio's felony sentencing framework unconstitutional. State v. Foster, ___ Ohio St.3d ___,2006-Ohio-856. Specifically, the Ohio Supreme Court held R.C.2929.14(B) unconstitutional. Id. at paragraph one of the syllabus. Since appellant was sentenced to more than the minimum under a statute found unconstitutional by the Ohio Supreme Court and appellant's direct appeal was pending when Foster was released, we must vacate the sentence and remand this case to the trial court for further proceedings consistent with Foster.
 {¶ 34} The judgment of the Auglaize County Common Pleas Court is affirmed in part; however, pursuant to Foster, we vacate appellant's sentence and remand the matter for further proceedings consistent with Foster.
 Judgment Affirmed in Part, Sentence Vacated and CauseRemanded.
 Bryant, P.J., concurs.
 Rogers, J., concurs in part, dissents in part.
[1] Pursuant to R.C. 2919.25(D)(4) "[i]f the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence * * * a violation of division (A) or (B) of this section is a felony of the third degree * * *." At the trial, the appellant filed a written notice of admission wherein he admitted two previous convictions for domestic violence. Thus, the appellant was charged and convicted of a third degree felony.