[Cite as *State v. Walters* , 2018-Ohio-3456.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 17CA65 |
| CHAD ALLEN WALTERS | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County Court of Common Pleas, Case No. 2016CR0629R

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     August 27, 2018

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
Prosecuting Attorney
By: JOSEPH SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellant

CASSANDRA J.M. MAYER
452 Park Avenue West
Mansfield, OH 44906

*Gwin, P.J.*

{¶1} Defendant-appellant Chad Allen Walters ["Chad"] appeals his conviction and sentence after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2} Walters and his wife Lynn had been arguing. The couple had been saving money so that they could move out of their apartment and purchase a house. However, Lynn's daughter became engaged and had found a venue for her wedding. Lynn wanted to use $2,500.00 from the savings nest egg to give to her daughter and her fiancé to pay for the wedding venue as a wedding present. Chad was not initially excited about the idea. The argument and discussions continued through the night via text messages. Lynn went to work the next morning and Chad returned home after his shift ended that morning. The arguments continued through the day via text. Eventually, Lynn sent Chad a message asking him to not be home when she returned after work to give her some time to calm down, as she did not want to see or talk with him. He agreed to go on a motorcycle ride.

{¶3} When Lynn arrived home, Chad was not home. She went to her room and took a nap. After some time, she awoke and noticed that Chad was home and was in the driveway, washing the cars. She sent him a text message regarding whether he had eaten yet. He indicated that he had not and that after he finished washing the car, they could go to dinner. Lynn agreed. Upon going downstairs, she discovered that Chad left her an envelope on the table with the $2,500.00 for the wedding venue for her daughter.

{¶4} They eventually went to dinner and continued the discussion regarding the money issue. Lynn was frustrated that Chad did not just give the money without comment, but rather made her feel that she was wrong to use the money for her daughter's wedding

venue.  Lynn argued that she wanted him to admit that he was in agreement with the decision, rather than just compromising and giving her the money.

{¶5}    After dinner, the argument continued in the car during the ride home.  Upon arriving home, the car was parked in the driveway because the motorcycle was parked in the middle of the garage.  Lynn had her cell phone in her hand while in the car.  She testified that, as she was getting out of the car, she told Chad that she should call her daughter's fiancé and tell him that Chad did not support their wedding.  Chad had been walking through the garage toward the door into the apartment when Lynn made the comment.  He immediately turned around with his face and Lynn's face almost touching.  The abruptness of this turn, coupled with Chad's movements caused Lynn to slip and fall on the wet concrete floor, in her flip-flops.  She jumped up and while yelling at Chad, she ran into the yard.  She was very upset and mad.

{¶6}    LaToya Powers testified that she saw Chad and Lynn arguing from across the street.  She saw the man and woman standing at the front door of a house.  The woman was screaming for help and then the man pushed the woman.

{¶7}    Rain Scheibert, a fourteen-year-old boy was living in a duplex next to the Walters.  Rain testified he heard yelling coming from outside of the house so he opened the door and saw Lynn yelling for help.  Lynn was attempting to get away from Chad.  Rain let her into his house and stood in the doorway to try to keep Chad from entering.  Chad followed Lynn in an attempt to retrieve her phone.  Lynn tripped running into the apartment and slipped on the rug, falling on the neighbor's skateboard.  Chad straddled Lynn and grabbed the cell phone from her.  During this time, Lynn was crying and screaming, "Help me, help me."  Rain tried to go and get help from a neighbor but the neighbor refused.

{¶8}   When Rain came back, he saw Chad run out of the house and go to his home.  Upon retrieving the phone, Chad left and went to his apartment next door.  Chad put the cell phone into the basket on the kitchen counter.  Rain then went into his house and helped Lynn up off the ground.  Rain testified that he went into the Walters' driveway to help Lynn pick up her stuff that was scattered around.  Rain could see bruises on Lynn's arms.  She also had a scratch on her foot.

{¶9}   Neighbors had called 9-1-1.  Lynn also called 9-1-1.  Upon law enforcement's arrival, Lynn explained the events of the evening.  Chad was arrested and charged with one count of domestic violence and was incarcerated.  Within a day or so, Lynn attempted to speak with Ontario police regarding the statements and indications made in the police report outlining the allegations from the incident on that September evening.  She attempted to point out that there were mistakes that she wanted corrected.  No one returned her call.  Lynn testified that she also attempted to speak to the prosecutor's office to correct the mistakes she noticed in the paperwork.

{¶10}  Chad was eventually indicted by the Richland grand jury for: Count 1: Aggravated Burglary, a felony of the first degree; Count 2: Burglary, a felony of the second degree; Count 3: Burglary as a Trespass in a Habitation, a felony of the third degree; Count 4: Disruption of Public Services, a felony of the fourth degree; Count 5: Domestic Violence, a misdemeanor of the first degree; and Count 6: Assault, a misdemeanor of the first degree.

{¶11}  The matter proceeded to jury trial in May of 2017.  At the close of the State's evidence, Chad challenged the sufficiency of the evidence presented by way of a Rule 29 Motion to dismiss all counts, but most specifically, the Disruption of Public Services,

assault and domestic violence. The court dismissed the assault charge but denied the rest of the Rule 29 motion. The trial court also denied Chad's request for a jury instruction for a lesser-included charge of disorderly conduct as to the domestic violence count.

{¶12} After a five-day trial, Chad was acquitted of the Aggravated Burglary, and Burglary, as a Trespass in a Habitation. Chad was convicted of the lesser-included charge of Criminal Trespass, Disruption of Public Services and Domestic Violence.

*Assignments of Error*

{¶13} Chad raises three assignments of error,

{¶14} "I. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S RULE 29 MOTION TO DISMISS COUNT FOUR, DISRUPTING PUBLIC SERVICE, WHICH DENIED DEFENDANT DUE PROCESS OF LAW AS GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES AND THE STATE OF OHIO.

{¶15} "II. THE TRIAL COURT FURTHER ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON A LESSER INCLUDED CHARGE OF DISORDERLY CONDUCT.

{¶16} "III. THE JURY'S FINDING OF GUILT RELATED TO COUNT FOUR, DISRUPTING PUBLIC SERVICE AND COUNT FIVE, DOMESTIC VIOLENCE WAS BASED ON INSUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I. & III.

{¶17} In his first assignment of error, Chad alleges that the trial court erred in not granting his Crim. R. 29 motion for acquittal on the charge of Disrupting Public Services. In determining whether a trial court erred in overruling an appellant's motion for judgment

of acquittal, the reviewing court focuses on the sufficiency of the evidence.  See, *e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991), *superseded by State constitutional amendment on other grounds in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668(1997).  In his third assignment of error, Chad contends his convictions for Disrupting Public Services and Domestic Violence are based upon insufficient evidence and are against the manifest weight of the evidence produced by the state at trial.

**STANDARD OF APPELLATE REVIEW.**

*Sufficiency of the Evidence.*

**{¶18}**  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶19}**  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* Oh. Sup. Ct. No. 2016-1255, 2018-Ohio-22, 2018 WL 328882 (Jan. 4, 2018), ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

<u>ISSUE FOR APPEAL</u>

*A.   Whether, after viewing the evidence in the light most favorable to the <u>prosecution, the evidence, "if believed, would convince the average mind of the</u> <u>defendant's guilt on each element of the crimes beyond a reasonable doubt."</u>*

1. Disrupting Public Service.

**{¶20}** Chad was indicted on one count of Disrupting Public Services in violation of R.C. 2909.04(A)(1),

> (A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:
>
> (1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service

communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications;

* * *

**{¶21}** The word "property" is defined in R.C. 2901.01(A)(1 0)(a) as follows:

'Property' means any property, real or personal, tangible or intangible, and any interest or license in that property. 'Property' includes, but is not limited to * * * telecommunications devices * * *.

**{¶22}** R.C. 2901.01(A)(10)(c) provides that the term "telecommunications device," as it is used in division (A)(10), has the same meaning as in R.C. 2913.01. "Telecommunications device" is defined in R.C. 2913.01(Y) as:

[A]ny instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem.

**{¶23}** In *State v. Robinson*, the Supreme Court noted that the reference to "damaging or tampering with any property" in R.C. 2909.04(A) includes property such as a private telephone or a mobile telephone. 124 Ohio St.3d 76, 2009–Ohio–5937, 919 N.E.2d 190, ¶ 29. Once it is determined that a defendant damaged or tampered with a victim's telephone, the next consideration is whether that act "substantially impairs the ability of law-enforcement officers, firefighters, rescue personnel, emergency-medical-

services personnel, or emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm" in order to constitute a violation of R.C. 2909.04(A)(3). 124 Ohio St.3d at ¶ 32, 919 N.E.2d 190.

{¶24} In *Robinson*, the victim was already in contact with 9–1–1 when Robinson destroyed the victim's mobile telephone, rendering the victim unable to provide complete information to the police.124 Ohio St.3d at ¶ 7–8, 38, 919 N.E.2d 190. However, the police were able to locate the scene from the information the victim had provided, as well as from a second telephone call from another party about their general whereabouts.

{¶25} The facts in the case at bar demonstrate "substantial interference." As Lynn was attempting to retrieve her cell phone from the driveway, she testified that she told Chad that she was going to call 9-1-1. 3T. at 311; 420. Chad pursued Lynn to the neighbor's house and wrestled the cell phone from Lynn. He took the cell phone back to the couple's apartment where he abandoned it. Lynn was not aware of what Chad had done with her phone. Lynn used a neighbor's phone to call 9-1-1.

{¶26} In *State v. Yoakum*, we held appellee is not required to prove that an actual 9–1–1 emergency call was in progress when the telephone was disabled by the defendant throwing it against the wall. 5th Dist. No. 01 CA005, 2002–Ohio–249, at *2, *citing State v. Brown*, 97 Ohio App.3d 293, 301, 646 N.E.2d 838 (8th Dist.1994). Although he did not damage the cell phone, he prevented Lynn from making the call and placed the phone out of her reach. The statute is written in the disjunctive, i.e. "purposely *by any means*" or "knowingly by damage or tampering." (Emphases added). The trial court instructed the jury on both methods of violating the statute. 3T. at 541. In the case at bar, evidence was presented that Chad physically wrested Lynn for the cell phone and placed it where

she could not retrieve it without the possibility of encountering her attacker. There is no evidence that Lynn was aware Chad had abandoned the phone inside the couple's home.

{¶27} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Chad had committed the crime of Disrupting Public Services.

{¶28} We hold, therefore, that the state met its burden of production regarding each element of the crime of Disrupting Public Services and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Chad's conviction.

2. Domestic Violence.

{¶29} To find Chad guilty of Domestic Violence the trier of fact would have to find that Chad knowingly caused or attempt to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶30} R.C. 2901.22 defines "knowingly" as follows:

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶31} "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel*, 2nd Dist. No.

16221, 1998 WL 214606 (May 1, 1998), *citing State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412(1995).

**{¶32}** Chad does not dispute that Lynn was a "'family or household member." Further, Rain Scheibert testified to bruises and cuts on Lynn's arms. (1T. at 67-68). During the 9-1-1 call made by Lynn, she said that Chad choked her, took her phone, and pushed her down. Photographs of the injuries were submitted to the jury.

**{¶33}** If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, *80 Ohio St.3d 89, 684 N.E.2d 668(1997).* "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

**{¶34}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Chad inflicted physical harm on Lynn.  We hold, therefore, that the state met its burden of production regarding each element of the crime of domestic violence and, accordingly, there was sufficient evidence to support Chad's conviction.

*Manifest weight of the evidence.*

**{¶35}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶36}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶37}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

ISSUE FOR APPEAL.

*B.   Whether the jury court clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

**{¶38}**  In the case at bar, Chad contends that he did not act knowingly in either causing Lynn's injuries or in retrieving her cell phone.  Chad contends he was simply trying to keep Lynn from calling her daughter or her daughter's fiancé.

**{¶39}**  The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."  *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996).  Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true.  *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).  Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.  *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

**{¶40}** In the case at bar, the jury heard the witnesses, viewed the evidence and heard Chad's statement to the police as well as his attorney's arguments and explanations about Chad and Lynn's actions. Thus, a rational basis exists in the record for the jury's decision. The jury found Chad not guilty of Aggravated Burglary and Burglary.

**{¶41}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Chad's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Chad's guilt.

**{¶42}** The jury neither lost his way nor created a miscarriage of justice in convicting Chad of disrupting public services and domestic violence.

**{¶43}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Chad was convicted.

CONCLUSION.

**{¶44}** Chad's First and Third Assignments of Error are overruled.

II.

**{¶45}** In his Second Assignment of Error, Chad contends that the trial court erred in failing to instruct the jury on the lesser-included offense of Disorderly Conduct relative to the Domestic Violence charge.

**STANDARD OF APPELLATE REVIEW.**

**{¶46}** We review a trial court's refusal to provide a requested jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). Generally, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus.

**{¶47}** In *State v. Deanda,* the Ohio Supreme Court observed,

The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense. *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). The second tier looks to the evidence in a particular case and determines whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Evans* at ¶ 13, *quoting Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11. Only in the second tier of the analysis do the facts of a particular case become relevant.

136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶6.

**{¶48}** Chad argues he was entitled to an instruction on the lesser-included offense of disorderly conduct as defined by R.C. 2917.11(A)(1), "No person shall recklessly cause inconvenience, annoyance, or alarm to another by...[e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]" He was convicted of domestic violence in violation of R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

## ISSUES FOR APPEAL.

*A. Whether Disorderly Conduct as set forth in R.C. 2917.11(A) (1) is a lesser-included offense of Domestic Violence as set forth in R.C. 2919.25(A).*

**{¶49}** In *State v. Houston*, the Court observed,

We hold that disorderly conduct as set forth in R.C. 2917.11(A)(1) is a lesser-included offense of domestic violence as set forth in R.C. 2919.25(A). In so holding, we note that, although there are some differences of opinion on this issue in Ohio, our view is the majority view and tends to comport with the updated test determined by the Supreme Court and set forth in [*State v.*] *Evans* [122 Ohio St.3d 318, 2009-Ohio-2974, 911 N.E.2d 889] at ¶ 26. *Compare* [*Cleveland Heights v.*] *Cohen* [2015-Ohio-1636, 31 N.E.3d 695] at ¶ 38; *In re S.W.*, 2d Dist. No. 24525, 2011-Ohio-5291, 2011 WL 4863972, ¶ 37; *State v. Maynard*, 4th Dist. No. 10CA43, 2012-Ohio-786, 2012 WL 628196, ¶ 27; *State v. Golding*, 11th Dist. No. 2008-L-049, 2009-Ohio-1437, 2009 WL 806915, ¶ 41; *State v. Berry*, 12th Dist. No. CA2006-11-133, 2007-Ohio-7082, 2007 WL 4554948, ¶ 20; *with State v. Poppe*, 3d Dist. No. 2-04-40, 2006-Ohio-1994, 2006 WL

1062023, ¶ 31–32, *citing State v. Schaefer*, 2d Dist. No. 99 CA 88, 2000 WL 492094 (Apr. 28, 200); *State v. Blasdell*, 155 Ohio App.3d 423, 2003-Ohio-6392, 801 N.E.2d 853, ¶ 16–23 (7th Dist.), citin*g Schaefer; see also Cleveland v. Hall*, 8th Dist. No. 101820, 2015-Ohio-2698, 2015 WL 4043005, ¶ 35–40 (distinguishing *Blasdell* and *Schaefer* as predating *Evans)*; *In re S.W.* at ¶ 29–37 (explaining that *Evans* undermined *Schaefer).* The Supreme Court has held that disorderly conduct is a lesser-included offense of domestic violence although the particular alternative form of domestic violence at issue was the prohibition that "[n]o person by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." *Shaker Heights v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 6; R.C. 2919.25(C).

10th Dist. Franklin No. 16AP-157, 2017-Ohio-1122, 87 N.E.3d 797, ¶46.

**{¶50}** We likewise hold that disorderly conduct, as set forth in R.C. 2917.11(A) (1) is a lesser-included offense of domestic violence as set forth in R.C. 2919.25(A).

*B. Whether the evidence presented at trial would reasonably support both an acquittal on the charge of Domestic Violence and a conviction upon the lesser-included offense of Disorderly Conduct.*

**{¶51}** "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio

St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to defendant. *State v. Smith*, 89 Ohio St.3d 323, 331, 731 N.E.2d 645(2000); *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303(1980).

**{¶52}** However, an instruction is not warranted every time *some* evidence is presented on a lesser-included offense. Rather, there must be "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." *State v. Shane*, 63 Ohio St.3d at 632-633, 590 N.E.2d 272; *State v. Conway*, 108 Ohio St.3d at 240,842 N.E.2d at 1027, 2006-Ohio-791, ¶ 134.

**{¶53}** In the case at bar, the question becomes whether the jury could have found that Chad did not "knowingly cause or attempt to cause physical harm to" Lynn but did "recklessly cause inconvenience, annoyance, or alarm to" Lynn by "engaging in fighting," "threatening harm," or "in violent or turbulent behavior." R.C. 2919.25(A); 2917.11(A)(1); *see also* R.C. 2901.01(A)(3) (defining "physical harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration"). *State v. Houston,* 2017-Ohio-1122, 87 N.E.3d 797, ¶48.

**{¶54}** Lynn testified that Chad pushed her down while inside the garage. 3T. at 309. Latoya Powers corroborated that Chad pushed Lynn down. 1T. at 159. Rain Scheibert testified that Chad was cutting off the circulation in Lynn's arms. 1T. at 61. He further testified that he observed cuts and bruises on Lynn after the altercation. 1T. at 67-68. Photographs of the injuries were submitted to the jury. State's Exhibits 17; 18. Although Lynn hedged her testimony at trial evidence was presented that Chad choked

her.  3T. at 333; 413.  The evidence also established that after pushing Lynn to the ground, Chad pursued her across the street and inside the home of a neighbor.  Lynn was screaming for help as she ran.  1T. at 147.  Lynn testified that all of her injuries came from the incident.  3T. at 324.  In our disposition of Chad's Third Assignment of Error, we held that Chad's conviction for Domestic Violence is supported by sufficient evidence.

{¶55}  Viewing all the evidence in the light most favorable to Chad, the jury could not reasonably conclude that Chad did not cause physical harm to his wife.  In other words, the evidence at trial would not "reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."  *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶133 *quoting State v. Thomas,* 40 Ohio St.3d213, 533 N.E.2d 286(1988), paragraph two of the syllabus.

{¶56}  Chad's Second Assignment of Error is overruled.

{¶57}  The judgment of the Richland County Court of Common Pleas is affirmed.


By: Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur