[Cite as *State v. Sida*, 2025-Ohio-2021.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| JAVIER IVAN SIDA | : | Case No. 2024 CA 00096 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas Case No. 2024 CR 0533

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      June 5, 2025

APPEARANCES:

For Plaintiff-Appellee

Kyle L. Stone
Stark County Prosecuting Attorney
Vicki L. DeSantis
Assistant Prosecuting Attorney
110 Central Plaza South, Ste. 510
Canton, Ohio 44702

For Defendant-Appellant

George Urban
116 Cleveland Avenue N.W.
Suite 808
Canton, Ohio 44702

*Gormley, J.*

{¶1}    Defendant Javier I. Sida appeals his burglary, disrupting-public-services, and assault convictions following his jury trial in Stark County.  Sida argues that his convictions were not supported by sufficient evidence and that they were against the manifest weight of the evidence.  For the reasons explained below, we affirm Sida's convictions.

**Facts and Procedural History**

{¶2}    M.S. and C.S. are a married elderly couple who owned several townhouses in Massillon, Ohio and who rented out those townhouses to tenants.  Though Sida was not a tenant at any of their properties, the couple knew Sida because he was dating a woman named Sherilyn, who was the sister of one of the couple's tenants, Russel Maxhimer.  According to his trial testimony, M.S. had spoken to Sida on approximately eight to ten occasions prior to the incident at issue in this case.  The couple evicted Maxhimer in December 2023.

{¶3}    In March 2024, the couple were making repairs to the unit that Maxhimer had been evicted from.  One of the repairs included fixing a broken lock on the front door of the unit.  While he was working on the front door, M.S. saw Sida coming across the front porch toward him.  M.S. — according to his trial testimony — attempted to close and lock the door, but he was prevented from doing so when Sida grabbed the door and held it open.

{¶4}    M.S. testified at trial that when Sida first approached him, Sida began asking him where Sherilyn was.  Despite being told by M.S. that Maxhimer had been evicted and that Sherilyn was not at the residence, Sida refused to believe that M.S. did not know

where Sherilyn was. After M.S. told his wife to call the police because Sida would not leave, Sida forced his way inside the apartment and punched and kicked M.S. Both C.S. and M.S. testified that Sida then walked over to C.S. — who was holding her phone and about to call the police — and said something to the effect of "call the police, bitch" before punching C.S. in the face. The impact caused C.S.'s phone to fly out of her hand and her glasses to slide off her face.

{¶5} After he punched C.S., Sida left the residence and slid into the front passenger seat of a black Jeep that was parked nearby. Donald Lance, the neighborhood mailman, witnessed the altercation through one of the windows at the townhouse and contacted the police to provide them with the license plate number of the black Jeep that Sida had entered. C.S. was able to call the police after Sida left, and officers responded to the scene to take statements from M.S., C.S., and Donald Lance.

{¶6} Sida was arrested later that same evening for an unrelated incident at a nearby tavern. At the time of his arrest, Sida was with the owner of a black Jeep that matched the license plate number that had been provided to the police.

{¶7} Sida was indicted on one count of burglary, one count of disrupting public services, and two counts of assault in connection with the incident that occurred at the elderly couple's townhouse. Sida was convicted on all four counts at his jury trial. He now appeals.

## Sida's Convictions Were Supported by Sufficient Evidence

{¶8} In his first assignment of error, Sida argues that the state failed to present sufficient evidence to support convictions on each of the four charges. In his third assignment of error, Sida similarly contends that the trial court erred when it denied his

Crim.R. 29 motion for acquittal. Because his first and third assignments of error both relate to the sufficiency of the evidence presented at the trial, we will address them together.

{¶9} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

*Conviction for Burglary*

{¶10} In his challenge to the evidence supporting his burglary conviction, Sida claims that the state failed to present sufficient evidence of any intent on his part to commit a criminal offense in the townhouse owned by the elderly couple.

{¶11} To prove the R.C. 2911.12(A)(1) burglary charge in Sida's case, the state was required to introduce evidence that Sida, by force, stealth, or deception, "trespass[ed] in an occupied structure . . . when another person other than an accomplice of the offender [wa]s present, with purpose to commit in the structure . . . any criminal offense." R.C. 2911.12(A)(1). Trespass "is defined as knowingly and without privilege entering or

remaining on the premises of another." *State v. Ramunas*, 2021-Ohio-3191, ¶ 15 (5th Dist.), citing R.C. 2911.21(A)(1).

{¶12} The Supreme Court of Ohio — in interpreting the "purpose" element of aggravated burglary — has explained that "a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 530 (2000). Our court has applied that principle to the crime of burglary. *Ramunas* at ¶ 15 ("Because the language concerning 'purpose to commit . . . any criminal offense' is also found in R.C. 2911.12, defining burglary, the rule of law set forth in *Fontes* also applies to the offense of burglary.").

{¶13} "A person acts purposely when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). "It is a fundamental principle that a person is presumed to intend the natural, reasonable, and probable consequences of his voluntary acts." *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978). The intent with which an act is committed may be inferred from the doing of the act itself. *State v. Asp*, 2023-Ohio-290, ¶ 40 (5th Dist.).

{¶14} The state presented sufficient evidence that Sida acted with a purpose to commit assault in the townhouse. Both M.S. and C.S. testified at trial that Sida forced his way into the townhouse and assaulted them. M.S. testified that Sida punched and kicked him, and C.S. testified that she was punched in the face and that Sida was her attacker. Sida's act of striking the two elderly townhouse owners was, in and of itself, sufficient evidence from which the jurors could infer that Sida, during the trespass, acted with the purpose of assaulting the couple.

**{¶15}** In support of his contrary view here, Sida points out that M.S. testified that Sida initially came to the townhouse looking for Sherilyn, which Sida argues was his "purpose" in going to the townhouse. As explained above, however, the state was not required to show that Sida went to the townhouse with the purpose of assaulting the elderly couple inside. Evidence that Sida decided to assault his victims while he was committing the trespass was enough.

**{¶16}** The state presented sufficient evidence at Sida's trial on each element of the burglary charge.

<u>Conviction for Disrupting Public Services</u>

**{¶17}** Sida argues that the state failed to offer any proof that he had the requisite mental state to support a conviction for disrupting public services under R.C. 2909.04(A)(1).

**{¶18}** Before Sida could be convicted of disrupting public services, the state was required to prove that Sida "purposely by any means *or* knowingly by damaging or tampering with any property . . . interrupt[ed] or impair[ed] . . . police, fire, or other public service communications." (Emphasis added.) R.C. 2909.04(A)(1). We note, initially, that Sida appears to misinterpret the text of R.C. 2909.04(A). The statute prescribes two ways in which Sida could have violated the statute in this case: (1) purposely, by any means, interrupting or impairing telephone service or police communications, or (2) knowingly, by damaging or tampering with any property, interrupting or impairing telephone service or police communications. R.C. 2909.04(A)(1).

**{¶19}** "The statute is aimed at conduct which prevents a victim from using public services to seek emergency assistance." *State v. Galindo*, 2012-Ohio-3626, ¶ 17 (5th

Dist.). The act of "damaging . . . a single private telephone or cellular telephone" can fall within the statute's reach. *State v. Robinson*, 2009-Ohio-5937, ¶ 32. And because the statute indicates that the crime can be committed "purposely by any means," the state need not prove that a phone or other property was actually damaged or destroyed. *State v. Walters*, 2018-Ohio-3456, ¶ 26 (5th Dist.) ("Although he did not damage the cell phone, [defendant] prevented [the victim] from making the call and placed the phone out of her reach").

**{¶20}** A person acts purposely when "it is the person's specific intention to cause a certain result." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant." *Asp*, 2023-Ohio-290, at ¶ 40 (5th Dist.), citing *State v. Garner*, 74 Ohio St.3d 49, 60 (1995). "When a person breaks into a residence and their first act is to deprive the occupant of their means for contacting the outside world, a natural and probable inference is that they did so with the intention of preventing the occupant from calling the police." *State v. Jackson*, 2019-Ohio-170, ¶ 80 (3d Dist.).

**{¶21}** M.S. — according to his testimony at trial — told his wife to call the police because Sida would not leave the townhouse. C.S. in turn testified that she was holding her phone and dialing the Massillon Police Department when Sida walked over to her and said "call the cops, bitch" before punching her in the face. After C.S. was struck, her

phone flew out of her hand. That disruption necessarily interrupted C.S.'s effort to summon help.

{¶22} The trial testimony of both M.S. and C.S. gave the jury sufficient evidence to determine whether Sida's conduct met either one of the culpable mental states required by the statute. The jury could have found that Sida acted purposely to interrupt or impair C.S.'s ability to use her phone or to contact the police by punching her in the face, with that purpose being evident from Sida's conduct itself and from his statement about her calling the police. The jury, too, could have determined that Sida knowingly tampered with C.S.'s cell phone and impaired her use of it when he decided to punch her — an elderly woman — in the face while she was holding her phone and attempting to call the police. Certainly, the jury could have concluded that Sida was aware that his conduct would impair or interrupt C.S.'s ability to call for help.

{¶23} We are unpersuaded by Sida's argument that he "permitted" C.S. to contact law enforcement and did not damage or tamper with her cell phone in any way. As noted above, the state need not necessarily prove that the phone was damaged or destroyed. The state's evidence in this case, when viewed in a light most favorable to the state, was certainly sufficient to support the jury's verdict. From the elderly couple's testimony, the jury could conclude that Sida was aware that a probable result of his decision to punch C.S. in the face would be that her phone would be knocked out of her hand just as she was about to use that phone to summon the police. We therefore reject Sida's sufficiency challenge to his disrupting-public-services conviction.

*Convictions for Assault*

**{¶24}** Sida also argues that the state failed to present sufficient evidence to prove that Sida was the person who allegedly struck M.S. and C.S. To prove the two assault charges, the state was required, under R.C. 2903.13(A), to show that Sida "knowingly cause[d] or attempt[ed] to cause physical harm" to the two alleged victims.

**{¶25}** "[T]he testimony of one witness, if believed by the jury, is sufficient to support a conviction." *State v. Williams*, 2017-Ohio-803, ¶ 54 (5th Dist.). M.S. testified at the trial that he knew who Sida was because he had interacted with Sida on approximately eight to ten occasions prior to the townhouse encounter. When asked during direct-examination if he had any doubt that Sida was the man who attacked him, M.S. replied "none whatsoever, one hundred percent."

**{¶26}** C.S. also testified during the trial that Sida was the man who punched her. A recording of C.S.'s 9-1-1 call was played for the jury, and the jury heard C.S. tell the dispatcher that Sida had attacked her and her husband. Additionally, both elderly victims made in-court identifications of Sida as the man who attacked them.

**{¶27}** We find that the state presented sufficient evidence to support a guilty verdict on each of the two assault charges. Sida's first assignment of error is overruled.

*Denial of Crim.R. 29 Motion for Acquittal*

**{¶28}** In his third assignment of error, Sida argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal. We disagree.

**{¶29}** Crim.R. 29(A) provides that a criminal defendant can ask the trial court, after either party in a criminal case has finished its presentation of evidence, to "order the entry of a judgment of acquittal of one or more offenses charged in the indictment . . . if the

evidence is insufficient to sustain a conviction of such offense or offenses." As we explained above, the state presented evidence at the trial on each element of every offense in the indictment, and that evidence was legally sufficient to support the jury's verdicts. Sida's third assignment of error is overruled.

## Sida's Convictions Were Not Against the Manifest Weight of the Evidence

{¶30} In his second assignment of error, Sida contends that his convictions were against the manifest weight of the evidence.

{¶31} In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts "as a 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶32} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" (Emphasis in original.) *Thompkins* at 387. "[A]n appellate court will leave the issues of

weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

**{¶33}** The testimony provided at trial, Sida argues, casts serious doubt on the question of whether he was the person who assaulted the elderly couple. Though C.S. testified at the trial that Sida was the person who attacked her, she identified a photograph of another man as being a photograph of Sida. The trial judge also had to interrupt C.S.'s testimony multiple times to stop her from discussing topics that were not relevant at the trial, such as previous complaints about Sida from neighbors and previous interactions that she had had with Sida. Sida contends that these issues undermined C.S.'s credibility and ought to have prompted the jury to acquit him.

**{¶34}** Sida also points to the testimony of another trial witness — Donald Lance — to support his claim that the jury lost its way. Lance was the mailman who witnessed the alleged assaults through a window of the townhouse, and he testified at the trial that he told the police that the assailant was a white man with tattoos. Lance also testified that he saw the assailant for less than 20 seconds and that he could not recall what the tattoos looked like. (The record does not tell us about Sida's race or about any tattoos, but the jury of course had an opportunity to see him and to weigh Lance's testimony.)

**{¶35}** After reviewing the full record of the trial, we cannot say that the jury lost its way. Lance's testimony about the physical description of the assailant was based on his brief glimpse through a window and later outside the townhouse as the assailant fled. As for the victims themselves, both, with what they described as 100% certainty, testified that Sida was the person who assaulted them, and they both testified that they knew who

Sida was from prior interactions with him. Further, C.S., during her 9-1-1 call, identified Sida as her attacker, and a recording of that call was played for the jury.

{¶36} "While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence." *State v. Wolters*, 2022-Ohio-538, ¶ 20 (5th Dist.). Though there may have been hiccups in C.S.'s testimony at the trial, including her identification of some other person in a photograph as being Sida, the jury was free to weigh her credibility and consider her testimony as a whole.

{¶37} Having ourselves now evaluated the evidence and considered the credibility of the witnesses and any inconsistencies in their testimony, we readily find that a rational basis exists in the record for the jury's determination that Sida was in fact the person who assaulted the elderly couple. Sida's second assignment of error is overruled.

{¶38} For the reasons explained above, we affirm the judgment of the trial court.

By: Gormley, J.

King, P.J. and

Popham, J. concur.